```
              UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS

F.H. CANN & ASSOCIATES,      )
INC., SHERRI CANN, &         )
FRANK H. CANN, JR.,          )
                             )
          Plaintiffs,        )
                             )    CIVIL ACTION NO.
v.                           )    20-11251-DPW
                             )
TROY D. MOORMAN,             )
                             )
          Defendant.         )
```

MEMORANDUM AND ORDER
May 24, 2022

A delinquent debtor has responded — with a farfetched, distracting, and unsustainable theory of intellectual property violation — to efforts by a collection agency to recover a debt he owes. When the debt collection agency sought to collect his student loan debt, he claimed copyright protection of his name as a basis to assert a $500,000 interest in the agency's assets and to place a lien on property of its affiliated officers and shareholders. In this case the collection agency and its affiliates seek to terminate the debtor's distractive initiative.

Before me are a motion [Dkt. No. 9] to dismiss for failure to state a claim filed by the defendant, Troy D. Moorman; a motion [Dkt. No. 11] for preliminary injunctive relief filed by the plaintiffs, Frank H. Cann, Jr., Sherri Cann, and F.H. Cann &

Associates, Inc. (collectively "FHC"); and a motion [Dkt. No. 15] to strike most of Mr. Moorman's opposition to the motion for preliminary injunctive relief, filed by FHC.  Because Mr. Moorman's claims are utterly without merit, I will deny his motion to dismiss and, after granting in part and denying in part the motion to strike, I will grant Plaintiffs' interlocutory injunctive relief.

## I. BACKGROUND

### A. *Factual Background*

As alleged in the complaint, **FHC** is a Massachusetts debt-collection corporation.  Individual Plaintiffs **Sherri Cann** and **Frank H. Cann, Jr.**, are Massachusetts residents and officers and shareholders of FHC.  The defendant, **Troy D. Moorman**, is a resident of North Carolina.  The U.S. Department of Education engaged FHC to collect Mr. Moorman's delinquent student loan debt.

This dispute arises from actions Mr. Moorman took in response to FHC's efforts to collect his debts.  On or about April 8, 2019, Mr. Moorman mailed FHC a packet that included two documents: an "Affidavit of Truth" and a "Notice Written Communication / Security Agreement."  The affidavit claimed, ostensibly based on common law copyright, that Mr. Moorman had copyrighted and trademarked his own name.  The notice — which contains a forged, typed signature and seemingly refers to the

2

plaintiffs as SHITFORBRAINSATTORNEYCOLLECTIONAGENCY — purported to create unilaterally a security interest in all of FHC's assets.

Thereafter, Mr. Moorman sent an "Invoice" to Plaintiffs, which purports to bill FHC for the sum of $500,000 for using Mr. Moorman's name in a letter from FHC to Mr. Moorman, thereby violating Mr. Moorman's copyright.

Additionally, on or about July 7, 2019, Mr. Moorman filed a UCC-1 financing statement with the Secretary of the Commonwealth of Massachusetts, purporting to place a $500,000 lien on the home of Mr. and Mrs. Cann, in order to secure his claim for copyright violation. Mr. Moorman later sent them a second invoice.

### B. *Procedural History*

#### 1. The Complaint

On June 30, 2020, FHC filed suit against Mr. Moorman asserting four claims for relief.

First, FHC seeks a declaratory judgment under 28 U.S.C. § 2201 on grounds that (1) Mr. Moorman has no copyright or trademark in his name; (2) Mr. Moorman's purported $500,000 contract is void and unenforceable; (3) Mr. Moorman's purported $500,000 lien upon FHC's assets is void and unenforceable; (4) any UCC-1 financing statements filed by Mr. Moorman with regard to FHC are void and unenforceable; (5) Mr. Moorman's mailings

are void and have no legal effect; (6) Mr. Moorman cannot claim any common law or statutory copyright in his name; and (7) Mr. Moorman's use of the U.S. mail to send his mailings to FHC and to the Secretary of the Commonwealth were acts of mail fraud under 18 U.S.C. § 1341.

Second, FHC seeks a permanent injunction enjoining Mr. Moorman from: (1) claiming any form of copyright in his name; (2) claiming any form of trademark in his name; (3) use of the relevant documents mailed to FHC and to the Secretary of the Commonwealth; (4) attempting to create implied contracts through use of the U.S. Mail; and (5) filing any additional UCC-1 financing statements pertaining to Plaintiffs and mandating that he release every UCC-1 that he has filed in relation to this dispute.

Third, FHC seeks to quiet title to the real property on which Mr. Moorman has asserted his lien establishing that Mr. Moorman has no lien or security interest in that real property.

Fourth, FHC seeks actual damages and punitive damages from Mr. Moorman in the amount of $500,000 – the amount of Mr. Moorman's asserted lien.

2.  <u>Motion Filings</u>

On July 20, 2020, Mr. Moorman responded to the complaint with a motion to dismiss for insufficient service of process. I denied Mr. Moorman's motion without prejudice on August 5, 2020,

subject to proper service within 90 days, which the plaintiffs completed on August 20, 2020.  *See* Fed. R. Civ. P. 4(m).  On September 8, 2020, Mr. Moorman filed a new motion to dismiss for failure to state a claim, which FHC opposed and is before me now.

Thereafter, on October 15, 2020, FHC moved for preliminary injunctive relief to require that Mr. Moorman remove the UCC-1 he filed with the Massachusetts Secretary of the Commonwealth.  Mr. Moorman opposed that motion and FHC moved to strike his opposition to the preliminary injunction motion.  On December 7, 2020, Mr. Moorman filed a "Demand for Abstention," which I treat as an opposition to the strike motion.

## II. MOTION TO DISMISS

### A. *Standard of Review*

I follow a two-step inquiry to address a motion to dismiss for failure to state a claim.  *Schatz* v. *Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012).  First, I "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements."  *Id.* at 55; *see Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007).  Second, I "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief."  *Schatz*, 669

5

F.3d at 55. Plausible means "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This is "a context-specific task that requires [me] to draw on [my] judicial experience and common sense." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 679 (2009).

*B.  Discussion*

Mr. Moorman's motion to dismiss is far too underdeveloped for a court to indulge his contentions. He states simply the legal standard governing motions to dismiss. He makes no arguments, except to assert in a conclusory fashion that "Plaintiffs have not stated a plausible claim that Defendants have taken their property under Act 1." A simple recitation of the legal standard governing a motion to dismiss is insufficient.

Since Mr. Moorman is acting pro se, I will give his motion to dismiss "a liberal reading," *Rodi* v. *S. New England Sch. of Law*, 389 F.3d 5, 14 (1st Cir. 2004), but a pro se litigant must at least attempt to offer a legal argument when he moves to dismiss a complaint that is not obviously flawed. "It is not [the court's] job to put flesh on the bare bones of an underdeveloped argument." *United States* v. *Mathur*, 624 F.3d 498, 508 (1st Cir. 2010); *see United States* v. *Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) (rejecting a "skeletal" argument that "leav[es] the court to do counsel's work"). "Judges are not

expected to be mindreaders.  Consequently, a litigant has an obligation 'to spell out its arguments squarely and distinctly,' or else forever hold its peace." *Rivera-Gomez* v. *de Castro*, 843 F.2d 631, 635 (1st Cir. 1988) (quoting *Paterson-Leitch Co.* v. *Mass. Municipal Wholesale Elec. Co.*, 840 F.2d 985, 990 (1st Cir. 1988)) (internal citation omitted).  I will deny the motion to dismiss.

### III. MOTION TO STRIKE

#### A. *Standard of Review*

A district court has discretion to strike "any redundant, immaterial, impertinent, or scandalous matter," Fed. R. Civ. P. 12(f), though "motions to strike are generally disfavored," *CrossFit, Inc.* v. *Mustapha*, No. 13-CV-11498-FDS, 2013 WL 12175101, at *1 (D. Mass. Oct. 18, 2013).

#### B. *Discussion*

Based on a variety of grounds, FHC says I should strike several items that Mr. Moorman filed in response to its motion for preliminary injunction: 1) the entirety of his opposition to this motion [Dkt. No. 14], which he styles a "Motion to Deny Temporary Injunction"; 2) his "Declaration of Contract by Affidavit of Truth"; 3) his "Affidavit in Rebuttal of Affidavit of Sheri Cann"; and 4) exhibits attached to the opposition "motion."  I consider each document in turn.

1. <u>Motion to Deny Temporary Injunction</u>

FHC says the "Motion to Deny Temporary Injunction" should be stricken because it is unsigned and thus violates FRCP Rule 11(a), which requires filings to be signed by "a party personally if the party is unrepresented." Fed. R. Civ. P. 11(a).

A court may strike an unsigned paper unless the omission is promptly corrected after being called to the party's attention. *See Craven ex rel. Henry* v. *Bos. Health Net Ins. Co.*, No. CIV.A. 12-12064-JCB, 2012 WL 6097067, at *2 (D. Mass. Dec. 6, 2012) (ordering the pro se plaintiff to submit a signed iteration of his pleading or "all claims asserted by him will be dismissed"); *Wrenn* v. *New York City Health & Hosps. Corp.*, 104 F.R.D. 553, (S.D.N.Y. 1985) (invalidating an unsigned pleading to amend a complaint when the defendant's counsel left the pleading unsigned for five weeks after notification of the defect).

No reason appears, other than oversight, for Mr. Moorman's failure to sign. FHC concedes that Mr. Moorman signed various other papers with a red fingerprint (presumably, his own). Therefore, I exercise my discretion not to strike Mr. Moorman's opposition[1] to FHC's motion for preliminary injunctive relief so that I can reach the merits of the motion without further delay.

---

[1] FHC also argues that the document should be stricken because Mr. Moorman challenges my jurisdiction over this suit with the

2.  <u>Declaration of Contract by Affidavit of Truth</u>

FHC also moves to strike an affidavit submitted by Mr. Moorman pursuant to 28 U.S.C. § 1746(1). In sum, this "affidavit" seems to serve only the purpose of asserting that this court lacks authority over Mr. Moorman because he is not subject to the laws of the United States. *See* J.M. Berger, *Without Prejudice: What Sovereign Citizens Believe*, George Washington Program on Extremism 3-13 (June 2016), https://extremism.gwu.edu/sites/g/files/zaxdzs2191/f/downloads/JMB%20Sovereign%20Citizens.pdf (discussing the "Sovereign Citizen" movement). Section 1746(1) provides the procedure for submitting a declaration under penalty of perjury from outside the United States. Thus, Mr. Moorman implies that he is verifying the truth of his opposition from outside the United States.

Relatedly, Mr. Moorman also states that he is "a non-domestic natural man standing without the UNITED STATES and

---

following statement: "If this court removes the UCC-1, it must show under what authority/jurisdiction it is acting because precedents support the lawful independence of UCC as prejudicial and nonjudicial and using commercial resolutions by mail as conducted by DEFENDANT WITH PLAINTIFFS." [Dkt. No. 16 at 2 (quoting Dkt. No. 14 ¶ 11)]. I do not interpret this sentence as sufficient to present a cognizable legal challenge to my jurisdiction.

In addition, FHC argues that Mr. Moorman's opposition includes arguments supporting dismissal of the complaint under Rule 12(b)(6) and relying on Wisconsin state law. I reject this argument as insufficiently developed.

do[es] not stand in the corporate UNITED STATES or any of its sub-divisions including THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS." Mr. Moorman's affidavit proceeds to assert that he is "a private postmaster under the jurisdiction of the Universal Postal Union" and the "Attorney in Fact, Postmaster General." The document contains additional similar assertions.

In the affidavit, Mr. Moorman also claims not to "consent to these proceedings" and avers that the District of Massachusetts "can recognize and deal only with other legal persons, which is why [Mr. Moorman's] lawful Christian name has not been and will never be entered in [the District's] records." He further claims that this court lacks personal jurisdiction over this case because:

> [T]he DEFENDANTS' name, "TROY D. MOORMAN" is not my name, but the name of a municipal, legal-person created by the STATE OF CALIFORNIA without informing me and without my approval which constitutes fraud and is no the lawful, Christian name given to me by my parents which is "Troy D. Moorman."

Finally, Mr. Moorman attempts to create and then unilaterally to impose procedure requirements — for example, through his statement "that the PLAINTIFFS have until November 15th to rebut this affidavit in writing and failing to do so means they agree with each item as an indisputable fact."

The affidavit will be stricken because it is insufficient

to foreclose consideration of the pending motion for preliminary injunctive relief.

### 3. Affidavit in Rebuttal

FHC moves to strike "Defendant's Affidavit in Rebuttal of Affidavit of Sheri Cann in Support of Plaintiffs' Motion for Preliminary Injunction." [Dkt. No. 14-3]. FHC argues that the document is irrelevant because it discusses whether or not FHC has authority to attempt to collect a debt that Mr. Moorman owes to the U.S. Department of Education, and because Mr. Moorman again presents a "Certificate of Authentication" claiming to be postmaster general of the Universal Postal Union.

I disagree. Although through a lens that is at best out of focus, Mr. Moorman briefly discusses his understanding of the Uniform Commercial Code ("U.C.C.") as it relates to the formation of security agreements. Because I have found it appropriate to evaluate this portion of his papers in this Memorandum, I conclude that the document should not be stricken.

### 4. Exhibits

FHC moves to strike Exhibit B, an email sent by Mr. Moorman to FHC's counsel; and Attachment D, an additional memorandum of law titled "Res Judicata — Unrebutted or Uncontested Affidavit," which includes a series of quotations from various cases. FHC moves to strike the email as a settlement communication excludable under Rule 408 of the Federal Rules of Evidence.

11

Rule 408 prohibits reliance on evidence of settlement discussions "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408. Mr. Moorman proffers the email as evidence that he "offered to remove the lien if [FHC] agreed to leave him alone since they could not substantiate their claim." Although it is not wholly clear to me exactly how Mr. Moorman relies on the email to support his opposition, more pertinently, I find that he does improperly rely on it "to prove or disprove the validity . . . of a disputed claim," Fed. R. Evid. 408(a), and thus, I strike the document.

As for Attachment D, FHC argues that it should be stricken because it is irrelevant. The purpose for offering the document is not altogether clear, as FHC observes its relevance is "not apparent." Nevertheless, I exercise my discretion and conclude that it should not be stricken in order to permit me fully to assess the tenor of Mr. Moorman's Opposition to the Preliminary Injunction Motion.

5.  Conclusion

In conclusion, I grant the motion to strike the "Declaration of Contract by Affidavit of Truth" and the attached Exhibit C. I deny the motion to strike the "Motion to Deny Temporary Injunction," Attachment D, the attached "Affidavit in

Rebuttal of Affidavit of Sheri Cann," and the certificate of service.

### IV. MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

#### A. *Standard of Review*

FHC seeks an interlocutory order requiring Mr. Moorman to withdraw the UCC-1 he filed with the Massachusetts Secretary of the Commonwealth. A mandatory injunction, as this would be,[2] is "a potent weapon that should be used only when necessary to safeguard a litigant's legitimate interests." *Charlesbank Equity Fund II* v. *Blinds To Go, Inc.*, 370 F.3d 151, 163 (1st Cir. 2004). I weigh four factors, each of which FHC bears the burden of demonstrating. *Nieves-Marquez* v. *Puerto Rico*, 353 F.3d 108, 120 (1st Cir. 2003) (citing *Winter*, 555 U.S. at 24). These are "(1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest." *Id.*

#### B. *Discussion*

I address each factor individually before reaching a conclusion based on my judgment of these factors overall. *See*

---

[2] Requiring affirmative action results in characterization of the injunction as mandatory. *See Braintree Lab'ys, Inc.* v. *Citigroup Glob. Markets Inc.*, 622 F.3d 36, 40–41 (1st Cir. 2010).

*Trump* v. *Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) (internal citation omitted) (per curiam) ("Crafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents."); *Auburn News Co., Inc.* v. *Providence Journal Co.*, 659 F.2d 273, 277 (1st Cir. 1981) ("Application of these standards to a particular set of facts is not a mechanical process.").

    1.    <u>Likelihood of Success on the Merits</u>

The "most important" of the four factors is "[t]he showing of a likelihood of success on the merits." *Doe* v. *Trustees of Bos. Coll.*, 942 F.3d 527, 533 (1st Cir. 2019). FHC easily demonstrates this factor because Mr. Moorman's claim of a copyright in his name has no merit, as evidenced by the rulings of numerous courts that have already rejected the arguments he makes. With no valid copyright, there was no plausible consideration for the supposed security agreement, and thus no valid contract underlying the UCC-1.[3]

As a fundamental matter of contract law, a valid contract requires the exchange of something of value. *See Miller* v. *Cotter*, 863 N.E.2d 537, 547 n.16 (Mass. 2007); *Lee* v. *Paragon*

---

[3] The agreement is likely invalid for any number of other reasons, including the agreement's "self-executing" structure, which casts serious doubt on whether there was mutual assent.

*Grp. Contractors, Inc.*, 337 S.E.2d 132, 134 (N.C. App. Ct. 1985). I sit in diversity and must act as would a Massachusetts court, but I need not decide whether the laws of Massachusetts or North Carolina apply, because there is no conflict between their laws on this issue. *See Lambert* v. *Kysar*, 983 F.2d 1110, 1114 (1st Cir. 1993). Mr. Moorman has made copyright authorization to use his name the subject of the supposed agreement, but FHC already had this right, because Mr. Moorman's name is not copyright-protected.

First, Mr. Moorman's common law copyright claim is baseless. "Federal copyright law preempts rights under state law when they are the equivalent of those granted under the Copyright Act." *John G. Danielson, Inc.* v. *Winchester-Conant Properties, Inc.*, 322 F.3d 26, 44 (1st Cir. 2003) (citing 17 U.S.C. § 301(a)). Mr. Moorman's claims are preempted in accordance with the First Circuit's "functional test" for common law copyright claims, which asks whether "a state cause of action requires an extra element, beyond mere copying, preparation of derivative works, performance or display." *Tingley Sys., Inc.* v. *CSC Consulting, Inc.*, 152 F. Supp. 2d 95, 105 (D. Mass. 2001) (quoting *Data Gen. Corp.* v. *Grumman Sys. Supp. Corp.*, 36 F.3d 1147, 1164 (1st Cir. 1994), *abrogated on other grounds by Reed Elsevier, Inc.* v. *Muchnick*, 559 U.S. 154 (2010)). Mr. Moorman's claim — for which he cites no legal

authority — includes no apparent element "qualitatively different from the rights protected by copyright law." *See id.* His invoices refer to "unauthorized-use" fees, suggesting he takes issue with the "mere copying" or "display" of his name. *Cf. id.*

Second, there is no federal copyright protection for names. The Supreme Court made this clear in *Feist Publications, Inc.* v. *Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). There the Court dealt with a company seeking copyright protection in a phonebook. *Id.* at 342. The Court observed that Section 102(b) of the Copyright Act "is universally understood to prohibit any copyright in facts," *id.* at 356, and went on to explain that this requirement rules out protection for names, among other forms of factual information, *id.* at 361.

Thus, the UCC-1 is invalid, because no copyright exists in Mr. Moorman's name, and consequently nothing of value can be said to have been exchanged between the parties. Courts have rejected similar claims following the same reasoning that common law copyright claims are preempted and names are not subject to federal copyright protection. *See United States* v. *Rodriguez Ramirez*, 291 F. Supp. 2d 266, 269 (S.D.N.Y. 2003) (voiding liens placed on property of federal officials and rejecting defendant's claim of a common law copyright in his name because common law copyright was substantially displaced by Title 17 of

16

the U.S. Code and "a name is not a proper subject for copyright"); *see also Ray* v. *Credit Union One*, No. 06-CV-11694, 2007 WL 522700, at *2 (E.D. Mich. Feb. 14, 2007) (similar reasoning); *Gannon* v. *Tucknott Miller*, No. 1:05-CV-00168-TS, 2006 WL 1793581, at *2 (N.D. Ind. June 28, 2006) (same).

2. Irreparable Harm

The plaintiffs say Mr. and Mrs. Cann will be unable to exercise their complete rights over their property if the UCC-1 remains on the public record.  FHC itself also faces a risk of permanent damage to its credit and goodwill with its bank, which periodically reviews FHC's finances and would take note of the lien.

I find that the plaintiffs have shown at least some irreparable harm will likely result without preliminary injunctive relief.  "By its very nature injury to goodwill and reputation is not easily measured or fully compensable in damages.  Accordingly, this kind of harm is often held to be irreparable."  *Ross-Simons of Warwick, Inc.* v. *Baccarat, Inc.*, 102 F.3d 12, 18 (1st Cir. 1996).

3. Balance of Hardships

The balance of hardships weighs decidedly in FHC's favor. This factor considers "the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues."

*Charlesbank Equity Fund II* v. *Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004) (quoting *Ross-Simons*, 102 F.3d at 14).  FHC faces damage to its credit and business reputation, the loss of goodwill with its lending institution, and an improper encumbrance of property.  By contrast, Mr. Moorman faces no risk of loss, because he was never entitled to a copyright in his name in the first place.

    4.   <u>Public Interest</u>

The public interest is in FHC's favor as well.  "The abusive practice of [debtors] filing baseless liens and/or UCC financing statements for the purpose of harassment and credit impairment of the alleged [creditor] . . . is well documented." *Marr* v. *Caruso*, No. 1:07 CV 745, 2008 WL 4426340, at *4 (W.D. Mich. Aug. 22, 2008).  It is in the public interest to guard against suits unfounded in the law and intended only to harass.

    5.   <u>Analysis</u>

Each individual factor supports a preliminary mandatory injunction, including especially FHC's likelihood of success on the merits.  Taken all together, the factors weigh strongly in FHC's favor.

## V. CONCLUSION

For the foregoing reasons, I DENY the defendant's motion [Dkt. No. 9] to dismiss for failure to state a claim.  After DENYING in part and GRANTING in part the plaintiffs' motion

18

[Dkt. No. 15] to strike, I GRANT the plaintiffs' motion [Dkt. No. 11] for preliminary injunctive relief.

Mr. Moorman shall, on or before June 9, 2022, show cause, if any there be, why given the evidentiary and legal materials now of record, a final judgment declaring (1) Mr. Moorman has no statutory or common law copyright or trademark in his name; (2) Mr. Moorman's purported $500,000 contract is void and unenforceable; (3) Mr. Moorman's purported $500,000 lien upon Mr. and Mrs. Cann's assets is void and unenforceable; (4) any UCC-1 financing statements filed by Mr. Moorman with regard to FHC are void and unenforceable; and (5) Mr. Moorman's mailings to FHC are void and of no legal effect.

*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE